IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | | |
|---|---|---|
| ALISIA ISABELLA MONTAVONO, | ) | Case No.: 3:16-cv-01491-JE |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Merrill Schneider
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293

       Attorney for Plaintiff

Billy J. Williams, United States Attorney
Renata A. Gowie, Assistant United States Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Martha A. Boden
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d).

JELDERKS, Magistrate Judge:

Plaintiff Alisia Isabella Montavono[2] (Plaintiff) brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) under the Social Security Act (the Act). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C § 636(c). For the reasons that follow, the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff protectively filed her application for SSI on February 7, 2013, alleging disability beginning April 15, 2012. Tr. 16, 211. The Commissioner denied her application initially and on reconsideration. Tr. 141, 149. Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). Tr. 155-63. The hearing was held on May 19, 2015 before ALJ Sue Leise. Tr. 16. Plaintiff and Robert Gaffney, a vocational expert (VE), testified. Tr. 36-79. Plaintiff was represented by counsel. In a decision dated June 26, 2015, the ALJ found Plaintiff was not disabled within the meaning of the Act. Tr. 13-29. The ALJ's decision became final on June 13, 2016, when the Appeals Council denied Plaintiff's request for review. Tr. 1-4. Plaintiff now timely appeals the Commissioner's final decision.

## Factual Background

Plaintiff was born in 1964 and was 47 years old on the date she alleges she became disabled. Tr. 211. She attended special education classes beginning in the first grade and completed the tenth grade. Tr. 275, 416. Plaintiff attended beauty school and completed a bartending certificate. Tr. 416. She has past work as an unloader/material handler. Tr. 27.

---

[2] The administrative record contains medical records and prior disability claims for Lisa Inez Hopt, a person with the same social security number and date of birth as Plaintiff. The Court *sua sponte* confirmed that Plaintiff legally changed her name to Alisia Isabelle Montavono in *In the Matter of Lisa Inez Hopt*, 140100561 (Or. Cir. Ct. 2014).

**<u>Disability Analysis</u>**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). The five step sequential inquiry is summarized below, as described in *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

<u>Step One</u>. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 416.920(b).

<u>Step Two</u>. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 416.920(c).

<u>Step Three</u>. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 416.920(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. § 416.920(e), (f).

<u>Step Five</u>. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. § 416.920(g)(1).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

### **ALJ's Decision**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 7, 2013, the date she protectively filed her application for SSI. Tr. 18.

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, status post cervical surgery; asthma; early degenerative changes to the left knee; glaucoma; anxiety; migraines; and edema. Tr. 18. The ALJ noted that although she did not determine Plaintiff's conditions of hip bursitis and spot on lung to be severe, she accommodated for them in the residual functional capacity formulation. Tr. 18-19.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment as set out in the Listings, 20 C.F.R. Part 404, Subpart P, App.1. Tr. 19-20.

Next, the ALJ found that Plaintiff had the residual functional capacity (RCF) to perform light work, except that she could lift or carry 20 pounds occasionally and ten pounds frequently. Plaintiff can stand and/or walk for six hours in an eight-hour day, and can sit for six hours in an eight-hour day, with the need to alternate sitting and standing. Plaintiff can occasionally climb ramps or stairs but cannot climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, and kneel, and perform overhead reaching bilaterally. She should avoid exposure to dust, fumes, odors, and gases. She should also avoid hazards, unprotected heights, and dangerous machinery. Plaintiff can have occasional, superficial interaction with the public, and can work in proximity to coworkers but cannot engage in teamwork. Tr. 20. In making her determination, the ALJ found that Plaintiff's claims regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 21.

At step four, based on testimony by the VE, the ALJ found that Plaintiff was unable to perform past work as an unloader/material handler. Tr. 27.

At step five, based upon testimony by the VE, the ALJ determined that Plaintiff could perform work as a photocopy machine operator or as an office helper, both of which exist in significant numbers in the national economy. Tr. 28. Accordingly, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act since February 7, 2013. Tr. 29

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the

burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and of establishing that a claimant can perform "other work" at step five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40.

### Discussion

Plaintiff alleges the ALJ erred by: 1) failing to recognize certain impairments as "severe" at step two; 2) failing to properly weigh and consider medical opinion evidence; 3) improperly discrediting Plaintiff's subjective symptom allegations; 4) improperly discrediting lay witness statements; and 5) posing an "incomplete hypothetical" to the VE at step five.

### A.    Step Two Determinations

Plaintiff argues that the ALJ erred by failing to find the following impairments as "severe" at step two: bursitis causing hip pain; nodule on lung; post-traumatic stress disorder (PTSD); panic disorder with agoraphobia; anemia; restless leg syndrome interfering with sleep; arthritis, right elbow; and bilateral knee and hip pain.

The Commissioner argues that Plaintiff's challenge is legally insufficient and therefore

constitutes a waiver. In support, the Commissioner cites *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007), which addressed briefing requirements under the Rules of Appellate Procedure, and *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2007), which involved a party raising an issue at oral argument before an appellate panel that she failed to raise in her opening brief. Despite the cases cited by the Commissioner, the Court finds that Plaintiff's allegations sufficiently make a short and plain statement of her claim for relief. Fed. R. Civ. P. 8(a)(2).

Alternatively, the Commissioner argues that even if Plaintiff raised sufficient step two claims, the ALJ's findings are supported by substantial evidence. Moreover, the Commissioner argues that even if the ALJ erred, the error is harmless because the ALJ accounted for Plaintiff's non-severe conditions in formulating the RFC, and Plaintiff has not demonstrated how finding any of these additional impairments "severe" at step two would have changed the outcome of her case. After a thorough review of the record, the Court agrees that any error was harmless.

A medically determinable impairment or combination of impairments is considered "severe" at step two if it has lasted or can be expected to last for a continuous period of at least 12 months and significantly limits a claimant's mental or physical ability to perform basic work activities. 20 C.F.R. §§ 416.909, 416.921, 416.922(a). Existence of a medically determinable impairment "must be established by objective medical evidence from an acceptable medical source;" a claimant's statements about symptoms, diagnoses, or opinions are not considered. 20 C.F.R. § 416.921. Basic work activities "mean the abilities and aptitudes necessary to do most jobs," such as walking, standing, sitting, pushing, pulling, reaching, carrying, handling, understanding and carrying out simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, co-workers, and typical work situations. 20 C.F.R. § 416.922(b). "[A]n impairment(s) is considered "not severe" if it is a slight

abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." SSR 96-3p 1996 WL 374181.

### Restless Leg Syndrome

The only evidence of Plaintiff's restless leg syndrome are her own self-reports. Given the absence of any supporting medical evidence of record, the ALJ did not commit error by failing to include the condition as a severe impairment at step two. 20 C.F.R. § 416.921.

### Hip Bursitis

The record shows that Plaintiff complained of hip pain in February 2014, although a physical exam revealed full range of motion and 5/5 strength without pain. Tr. 719. Subsequent medical imaging revealed no arthritis or other abnormalities. Tr. 614, 862. In March 2014, Plaintiff received an anti-inflammatory injection in her left hip, and one month later, received an injection in her right hip. Tr. 713, 703. Plaintiff's discomfort appears to have resolved following the injection treatments, as there is no other evidence in the record regarding hip pain. Thus, the record reveals that, at most, Plaintiff suffered a three-month period of hip discomfort absent objective clinical findings, meeting neither the medical evidence nor the twelve-month duration requirements for step two. Nonetheless, in the RFC, the ALJ included postural limitations (*e.g.*, lifting, kneeling and crawling) to "account for any limitations caused by bursitis." Tr. 18; *see* SSR 96-8p (ALJ must consider all impairments in formulating RFC, even those that are non-severe).

### Arthritis, right elbow

In May 2013, Plaintiff complained of right elbow pain. Courtney Nall, M.D., Plaintiff's primary care provider, conducted a physical exam that revealed a full range of motion, no

swelling, and "mild TTP over lateral epicondyle and muscle bulk." Tr. 543. Dr. Nall diagnosed likely tendonitis or tennis elbow and recommended a forearm brace. *Id*. X-rays were unremarkable. Tr. 550. This discrete objective finding does not appear to meet the duration requirement, and even if it did, Plaintiff does not allege any limitations beyond the RFC. As such, any error is harmless.

### *Bilateral knee pain*

The ALJ found Plaintiff had the severe impairment of "early degenerative changes of the left knee." Tr. 18. Although Plaintiff complained of right knee pain in May and July 2013 and reported that taking naproxen helped her pain, the record lacks any evidence indicating a medically determinable impairment in the right knee. In February 2014, Plaintiff reported increased knee pain following a motor vehicle accident the previous month. Tr. 719. Consequently, in April 2014, Dr. Nall administered a Lidocaine injection for "relief from osteoarthritis pain in right knee." Tr. 702. In May 2014, Plaintiff complained of right knee pain and swelling. Tr. 694. The corresponding physical exam revealed "obvious effusion" but normal range of motion, no instability, and negative anterior/posterior drawer. Tr. 695. She was advised to ice her knee for 15 to 20 minutes every two to three hours for the next 48 hours, to elevate her knee and to wrap it in an elastic bandage, and to take ibuprofen or Aleve for anti-inflammatory purposes. Tr. 695. Thus, the record shows only discrete, sporadic complaints of right knee pain that do not appear to meet the duration requirement. In addition, Plaintiff does not allege any limitation beyond the RFC based on right knee impairment. Accordingly, any error is harmless.

### *Spot on Lung*

On March 17, 2015, Plaintiff was suffering from respiratory distress and underwent a CT angiogram which detected a three-millimeter nodule on the medial aspect of the right upper lobe

of her lung. Tr. 618. Plaintiff was advised to have a follow-up exam in 12 months if there was a history of risk factors for lung cancer. Tr. 619. Two days later, after finishing a prednisone burst and using an Advair inhaler, Plaintiff had an "improving, normal lung exam." Tr. 640. Dr. Nall surmised that Plaintiff's recent asthma-like symptoms had likely been caused by an upper respiratory infection. Tr. 640. There are no additional medical findings regarding the lung spot in the record. Thus, the ALJ appropriately concluded that "there is no evidence regarding whether this condition will cause more than mild functional limitations for the 12-month duration required by the regulations" and found the condition to be nonsevere. Tr. 19. Notably, however, the ALJ included asthma among Plaintiff's severe impairments at step two and accommodated for this in the RFC by limiting her exposure to dust, fumes, odors, and gases. Tr. 18, 20.

### PTSD and Panic Disorder with Agoraphobia

In March and April 2012, Plaintiff attended three individual counseling sessions at LifeWorks NW; as part of the intake interview, she was presumptively diagnosed with PTSD. Tr. 358-379. Records from the counseling sessions contain little objective information, although her therapist indicated that Plaintiff appeared "active and engaged." Tr. 363, 365. In August 2012, Donna J. Johns, Psy.D., conducted a consultative psychological examination consisting of a clinical interview and review of Plaintiff's medical and counseling records. Dr. Johns' "diagnostic impression" was that Plaintiff suffered from PTSD and Panic Disorder with Agoraphobia.[3] Tr. 416-19. The remaining record is silent as to any formal mental health assessments or treatment recommendations related to PTSD or Panic Disorder with

---

[3] Agoraphobia is defined as a "mental disorder characterized by the irrational fear of leaving the familiar setting of home, or venturing into the open, so pervasive that a large number of external life situations are entered into reluctantly or are avoided; often associated with panic attacks." Stedman's Medical Dictionary 40 (28th Ed.).

Agoraphobia; therefore, the record does not support a finding at step two that these conditions are severe impairments.

Notably, however, the ALJ included anxiety[4] among Plaintiff's severe impairments. Tr. 18. In the ALJ's discussion of whether Plaintiff's severe impairments meet or equal a listing, the ALJ found that Plaintiff had "moderate difficulties in social functioning related to anxiety" but that she was able to use public transportation, shop in stores, attend church regularly, "all of which entail some public contact." Tr. 19. The ALJ found that Plaintiff had, at most, mild limitations in concentration, persistence, or pace, given that she performed well on mental status exams and was able to engage in watching television, reading, and driving. Tr. 19-20. Additionally, the ALJ noted that Plaintiff had not "experienced any episodes of decompensation of extended duration," and had never "required hospitalization or significantly intensified treatment for her condition." Tr. 20. Accordingly, it appears the ALJ interpreted Dr. Johns' assessed conditions under the umbrella of "anxiety." Regardless, any error in omitting PTSD or panic disorder with agoraphobia from the list of severe impairments at step two is harmless because neither condition meets the duration requirement, and because Plaintiff has not alleged functional limitations beyond those attributed to her anxiety impairment.

### Anemia

The evidence of record indicates Plaintiff has the medically-determinable impairment of anemia which has lasted or could be expected to last continuously for 12 months. In May 2013, a blood test revealed that Plaintiff was "slightly anemic" and she was advised to restart iron

---

[4] Anxiety is defined as "[e]xperience of fear or apprehension in response to anticipated internal, or external danger accompanied by some or all of the following signs: muscle tension, restlessness, sympathetic (autonomic) hyperactivity (e.g., diarrhea, palpitation, rapid breathing, or jitteriness), or cognitive signs and symptoms (e.g., hypervigilance, confusion, decreased concentration, or fear of losing control). It may be transient or adaptive or pathological in intensity and duration." Stedman's Medical Dictionary 114 (28th Ed.).

tablets. Tr. 816. In July 2014, blood tests indicated Plaintiff was anemic. Tr. 581-82. Likewise, blood tests in January, March, and April 2015, showed that Plaintiff was anemic and she was advised to take iron supplements twice per day. Tr. 596, 599, 640-41, 755. However, there is no evidence in the record that Plaintiff's anemia by itself, or in combination with other impairments, limits her ability to function. Moreover, the record indicates Plaintiff's anemia is managed with vitamin supplements. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling" under the Act.). Thus, the ALJ properly found anemia causes no more than a minimal impact on Plaintiff's ability to work.

**B.    Evaluation of Medical Evidence**

Plaintiff raises challenges to the weight the ALJ accorded to the opinions of examining psychologist, Donna Johns, Psy.D., and non-examining state agency psychologist, Bill Hennings, Ph.D. Plaintiff also argues that the ALJ committed error by failing to address the opinion of non-examining state agency psychologist Vincent Gollogly, Ph.D.

*1) Donna Johns, Psy.D.*

Plaintiff argues that the ALJ erroneously rejected the Dr. Johns' August 2012 opinion that Plaintiff would be unable to "engage in sustained work activities at this time as a result of continuing problems with panic experiences, and symptoms of untreated PTSD." Tr. 419. The Commissioner argues that the ALJ reasonably concluded that evidence in Dr. Johns' notes was inconsistent with Dr. Johns' opinion and that the discrepancy between Dr. Johns' own notes and opinion is a clear and convincing reason to not rely on Dr. Johns' opinion regarding Plaintiff's functional limitations.

"There are three types of medical opinions in social security cases: those from treating

physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The uncontradicted opinion of an examining physician can be rejected only for "clear and convincing" reasons while an opinion contradicted by another doctor can be rejected only for specific and legitimate reasons that are support by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.") Evidence is inconsistent when it conflicts with other evidence or contains an internal conflict. 20 C.F.R. § 416.920b.

During the mental status exam, Dr. Johns observed that Plaintiff was dressed in appropriate attire, was well-groomed, and did not exhibit any evidence of psychomotor agitation. Tr. 417. Plaintiff was interpersonally cooperative and behaviorally appropriate, making frequent, non-hesitant eye contact. *Id*. Plaintiff exhibited frequent "tangentiality," but responded well to redirection. Tr. 418. Plaintiff's affect was "labile ranging from mirth to marked tearfulness." *Id*. Plaintiff was fully oriented to person, time, place, and purpose and she exhibited no impairment of remote memory as she was able to recall three out of three items after a five minute delay, and successfully completed a six-numeral digit span forward and a five-numeral digit span backwards. *Id*. She showed no evidence of impairment in concentration as she counted backwards with serial three's with mild latency and successfully spelled "world" backwards

without any latency. *Id*. She properly interpreted a proverb, showing no impairment of abstract thinking. *Id*.

Dr. Johns found that Plaintiff's "judgment seemed moderately impaired by history of interpersonal difficulties," however there was no evidence of impairment of insight. *Id*. Plaintiff's activities of daily living included engaging in daily hygiene and grooming, preparing meals, taking care of "all household chores," managing her personal finances, and caring for the two family dogs. *Id*. Dr. Johns found that there was no evidence of impairment in day-to-day activities as evidenced by Plaintiff's cooking meals without prompting and "no indication of impairment in her persistent concentration as seen in her ability to engage in sustained activities with her pets, her daughter, and her boyfriend." *Id*.

At the conclusion of the exam, Dr. Johns' assigned a GAF score of 53 and formed the "diagnostic impression" that Plaintiff suffered from PTSD and panic disorder with agoraphobia. Tr. 419. Without further explanation, Dr. Johns opined that while Plaintiff was "capable of average levels of reasoning, it is not likely she will be able to engage in sustained work-related activities at this time as a result of continuing problems with panic experiences and symptoms of untreated PTSD." *Id*.

The ALJ did not give great weight to Dr. Johns' opinion regarding Plaintiff's ability to engage in sustained work activity, concluding that Dr. Johns' exam notes conflict with her ultimate opinion and noting that "there is nothing in Dr. Johns' report to support the vague limitation regarding sustaining work activity." Tr. 27. Indeed, Plaintiff performed well on the objective tests for remote memory, concentration, and abstract reasoning, and was behaviorally appropriate during the exam. While her affect "ranged from mirth to tearfulness," it is important to note that Plaintiff discussed painful memories with Dr. Johns in addition to completing the

objective tests; tearfulness while discussing past traumas, by itself, does not provide support for Dr. Johns' opinion that Plaintiff's ability to sustain work activities is significantly impaired. Regardless, Dr. Johns did not explain the discrepancy between the objective examination findings and her conclusion. The unexplained internal inconsistency is a clear and convincing reason to discount the doctor's opinion.

The Commissioner also argues that Dr. Johns' opinion conflicted with the record as a whole, which showed that Plaintiff's mental health symptoms improved with medication and Plaintiff's own reports that she was able to care for her daughter, drive, shop, and attend church regularly. Indeed, the record indicates Plaintiff reported medication alleviated her anxiety symptoms and that Plaintiff even stopped taking the medication because she was "feeling better." Tr. 546, 717. The record also indicates that Plaintiff continued to be able to care for her own personal hygiene, manage her finances, shop, and attend regular medical appointments where she was behaviorally appropriate. Tr. 287, 417-18, 504, 543, 581. Thus, the ALJ properly accorded little weight to Dr. Johns' opinion based on conflict with the record as a whole. Tr. 25-26; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9the Cir. 2004).

The Commissioner argues that Dr. Johns' opinion was inconsistent with the opinions of non-examining state agency psychologists, Bill Hennings, Ph.D., and Dorothy Anderson, Ph.D. However, the ALJ did not rely on the opinions of state agency psychologists in deciding how much weight to give to Dr. Johns' opinion, and the Court cannot affirm on grounds the ALJ did not invoke. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

## 2) *Bill Hennings, Ph.D.*

Plaintiff asserts that the ALJ erred by rejecting the opinion of non-examining state agency consulting psychologist, Bill Hennings, Ph.D., that Plaintiff should be limited to "simple

work." The Commissioner argues that the ALJ's findings were reasonable because they were supported by the record as a whole, but even if the ALJ committed error, it is harmless because all of the jobs identified by the ALJ at step five are classified as unskilled work.

In June 2013, Dr. Hennings reviewed Plaintiff's claim for SSI and concluded that Plaintiff was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods. Tr. 103. Dr. Hennings opined that, based on Plaintiff's independence in her activities of daily living (ADLs) -- ability to manage her own finances, shop, cook, and complete basic tasks -- she was capable of carrying out short and simple instructions. *Id*. Dr. Hennings opined that Plaintiff was moderately limited in ability to interact with the general public and that, based on her anxiety symptoms, should have only occasional contact with the general public and co-workers, although there was no need for special supervision, and no indication of distracting behavior. *Id*. Accordingly, Dr. Hennings opined that Plaintiff could perform unskilled work.[5] Tr. 105.

The ALJ rejected this limitation to simple work, noting that Plaintiff "independently engages in various activities of daily living without documented difficulty." Tr. 27. Moreover, the ALJ observed, Dr. Johns' report did not document any deficiencies in concentration, memory, persistence, or pace. Tr. 26-7. However, although the ALJ concluded that the limitation to "simple work" was not supported by the record and did not include that limitation in the RFC formulation in her written opinion (Tr. 20), in the hypothetical question she posed to the VE, she included a limitation to "SVP[6] 1 or 2." Tr. 73. Therefore, because the VE identified unskilled

---

[5] Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). A person can usually learn to perform a job classified as unskilled work in 30 days, with little specific vocational preparation and judgment required. *Id*.

[6] "SVP" stands for "specific vocational preparation" and is used by the Dictionary of Occupational Titles (DOT) to describe the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT Appendix C.

work that the Plaintiff could perform, Plaintiff cannot demonstrate harm. *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

### 3)    *Vincent Gollogly, Ph.D.*

Plaintiff argues that the ALJ erred when she failed to address the September 2012 opinion of state agency psychologist, Vincent Gollogly, Ph.D. The Commissioner notes that Dr. Gollogly's opinion predates Plaintiff's current SSI application, and therefore argues that the opinion is not relevant. Alternatively, the Commissioner argues, even if failure to consider Dr. Gollogly's opinion was error, the error was harmless because the ALJ's RFC accounted for the doctor's assessment by limiting Plaintiff to occasional, superficial interaction with the public, and no teamwork.

Medical opinions that predate the alleged onset of disability are of limited relevance. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008). Nevertheless, although ALJs are "not required to adopt any prior administrative medical findings . . . they must consider this evidence." 20 C.F.R. § 416.913a(b)(1). The court may not, however, reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id*. at 1115. [T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id*. at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Here, the ALJ failed to mention Dr. Gollogly's opinion anywhere in her opinion and thus committed error. However, the ALJ vicariously addressed Dr. Gollogly's opinion through her discussion of the weight she accorded Dr. Johns' opinion and the opinions of "state agency

---

"SVP 1" means a worker would need a "short demonstration only" to perform the job; "SVP 2" means anything beyond a short demonstration up to and including one month. *Id*.

psychologists," Dr. Hennings and Dorothy Andersen, Ph.D. Tr. 25-27

Notably, Dr. Gollogly determined that Plaintiff was not significantly limited in her ability to carry out even detailed instructions or in her ability to maintain attention and concentration for extended periods of time – lesser findings than those of than Drs. Hennings and Andersen. Tr. 89, 103, 116. To the extent Plaintiff argues that Dr. Gollogly's assessment supports Dr. Johns' opinion that Plaintiff may have difficulty maintaining employment due to her mental health symptoms, as discussed above, the ALJ properly discredited Dr. Johns' opinion. Moreover, Dr. Gollogly explained that his assessment was *less* restrictive than that of, Dr. Johns, because Dr. Johns' "opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." Tr. 90-1. Ultimately, Dr. Gollogly endorsed a non-disability finding, determining that Plaintiff was not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances. Tr. 89, 92-3.

In sum, Plaintiff does not explain, nor can the Court deduce, how consideration of Dr. Gollogly's opinion and non-disability finding would have altered the ALJ's decision. Accordingly, the error was harmless.

**C.      Subjective Symptom Allegations**

Plaintiff alleges error in the ALJ's assessment of her subjective symptom allegations.

**1) Applicable Standard**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

The Commissioner's assertion that the clear-and-convincing standard does not apply to the ALJ's credibility findings is foreclosed by the Ninth Circuit's holding in *Burrell*, *supra*, 775 F.3d at 1136-37 (citations omitted). *See* Def.'s Br. 15 n.3; *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (quoting *Smolen*, 80 F.3d at 1281). "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* at 1015 (citations omitted). Therefore, an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

At the time of the ALJ's decision, Social Security Ruling ("SSR") 96-7p, *available at* 1996 WL 374186 (July 2, 1996), was in effect and provided that ALJs were to make a finding on the credibility of a claimant's statements about pain or other symptoms and its functional effects, and listed relevant factors that were to be considered. In March 2016, that ruling was superseded by SSR 16-3p, *available at* 2016 WL 1119029 (Mar. 16, 2016). Under SSR 16-3p the term "credibility" was eliminated from the Agency's sub-regulatory policy, and ALJs were no longer tasked with making an overarching credibility determination. *Id.* Instead, ALJs are to "limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." *Id.* at *10. Further, it is "not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" *Id.* at *9. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." *Id.* Thus, "[t]he focus of the evaluation of an individual's symptoms should not be to determine

whether he or she is a truthful person." *Id.* at *10.

The ALJ's decision in this case was issued before SSR 16-3p became effective, and the Ninth Circuit has not expressly ruled on whether SSR 16-3p applies retroactively. This Court has previously held that SSR 16-3p is a clarification of sub-regulatory policy rather than a new policy and thus was appropriately applied retroactively. *See, e.g.*, *Hanson v. Colvin*, No. 3:15-cv-01974-JE, 2017 WL 2432159, at *7 (D. Or. May 2, 2017) (applying SSR 16-3p retroactively); *Andre v. Colvin*, No. 6:14-cv-02009-JE (D. Or. Oct. 13, 2016) (same). The Ninth Circuit recently stated that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended) (quoting SSR 16-3p) (brackets omitted). After the Ninth Circuit issued its decision in *Trevizo*, SSR 16-3p was republished, changing the prior version's "effective date" term to "applicable date," and explaining that it was not intended that Agency adjudicators apply SSR 16-3p to determinations made before March 29, 2016. SSR 16-3p, *available at* 2017 WL 5180304 at *1 (Oct. 25, 2017).

The relevant factors an ALJ must consider are essentially the same under either ruling: when evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record, including the claimant's activities of daily living ("ADLs"); the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and

restrictions due to pain or other symptoms." 20 C.F.R. §416.929(c); SSR 96-7p; SSR 16-3p.

An ALJ may not reject a Plaintiff's subjective symptom claims "solely because [they are] not substantiated affirmatively by objective medical evidence." *Robbins v. Social Sec. Admin*, 466 F.3d 880, 883 (9th Cir. 2006). However, the lack of objective medical evidence or objective medical evidence that conflicts with a Plaintiff's subjective symptom allegations, is a clear and convincing reason to discount a Plaintiff's claims regarding the intensity and persistence of her impairments when combined with other factors – such as conflicts between Plaintiff's claimed limitations and her ADLs, the effective control of symptoms with conservative treatment, or Plaintiff's unexplained failure to comply with treatment – are present. *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002); 20 C.F.R. § 416.929.

Based on the guidance set forth in the republished version of SSR 16-3p, this Court will not find automatic error in cases decided on or before March 28, 2016, solely because an ALJ's assessment of subjective symptom statements speaks in terms of "credibility." SSR 16-3p. However, findings that are premised exclusively on a claimant's apparent character for truthfulness, rather than the listed factors, may constitute error. *Trevizo*, 871 F.3d at 678 n.5; *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (general credibility findings are insufficient) (citations omitted). And, as has long been the rule, if substantial evidence supports the ALJ's determination, it may be upheld even if some of the reasons cited by the ALJ are erroneous. *Carmickle*, *supra*, 533 F.3d at 1162.

### 2) Analysis

### *Migraines*

The ALJ discounted Plaintiff's claims regarding the intensity, frequency, and persistence of her migraine headaches, reasoning that medical evidence shows Plaintiff's migraines are

controlled with medication. Tr. 24. Plaintiff testified that even if she gets rest, she still suffers five or six migraines per month. Tr. 65.

The record shows that in September 2012, Plaintiff complained to Dr. Nall of worsening migraine headaches that seemed to be triggered by poor sleep. Tr. 489. Dr. Nall prescribed nortriptyline. Tr. 491. In March 2013, Plaintiff reported that nortriptyline caused her to be more stimulated and that increased insomnia was leading to increased migraines per week. Tr. 492. Plaintiff declined a daily prophylactic medication but agreed to try Imitrex. Tr. 495. In May 2013, Plaintiff reported that Imitrex "really helped" with her migraines and that if she takes it within the first 30 minutes, it will stop the headache. Tr. 541. Plaintiff again declined any prophylactic treatment. Tr. 543. Thus, Plaintiff's testimony regarding the frequency of her migraines is belied by the medical records which show that Plaintiff's complaints of frequent migraine headaches subsided with medication. Tr. 65.

Moreover, Plaintiff also testified that Imitrex stops her migraines if she is able to take it right away when she feels a migraine beginning; Plaintiff's testimony supports the ALJ's conclusion that Plaintiff's migraines are controlled with medication. Tr. 60. Finally, Plaintiff related that she purposefully does not always keep the medication with her and confirmed that she declined her doctor's suggestion for a daily migraine prevention medication because she does not like being on medications and prefers to take as little medication as possible. *Id*. Plaintiff's poor compliance with treatment and unwillingness to even try conservative treatment of daily medication further support the ALJ's conclusion.

Thus the record shows both limited complaints and successful conservative treatment of Plaintiff's migraine headaches. Accordingly, the ALJ provided clear and convincing reasons to discount Plaintiff's claims regarding the debilitating effects of migraines.

*Edema*

The ALJ found that the record is not consistent with Plaintiff's claims of significant edema. Tr. 24. In February 2014, Dr. Nall observed no clubbing, cyanosis, or edema upon physical exam. Tr. 719. The record shows that Plaintiff reported to the emergency department for bilateral leg swelling in July 2014. Tr. 579. A Doppler ultrasound revealed no deep venous thrombosis. Tr. 581. Plaintiff appeared calm and cooperative, reporting "some discomfort" when her legs become "particularly swollen." Tr. 579, 581. She was advised to elevate her legs and continue her iron therapy. Potassium and Lasix were also recommended. Tr. 582. In January 2015, Dr. Nall observed bilateral "trace edema" and approved Plaintiff's continued use of Lasix noting that it had been helpful. Tr. 676-77. In March 2015, Plaintiff reported to Dr. Nall that she only takes Lasix for leg swelling and that she is not taking it very often. Tr. 665. In two separate physical exams that same month, physicians noted no edema. Tr. 586, 639. Thus, Plaintiff's reports of frequent, painful edema requiring days of leg elevation (Tr. 66) are belied by the lack of supporting objective medical evidence, Plaintiff's own reports to physicians regarding the level of discomfort caused by the edema events, and Plaintiff's own reports of infrequent need to take medication to treat edema. These are clear and convincing reasons to discount Plaintiff's subjective symptom testimony regarding edema. Accordingly, the ALJ did not err.

*Musculoskeletal Pain*

Plaintiff testified that she spends most of her day in bed due to pain. Tr. 51, 284. The ALJ found that "the record documents the existence of musculoskeletal impairments, but shows improvement with treatment and fails to corroborate the extent of the symptoms and limitations alleged by the claimant." Tr. 21. Indeed, the record fails to support the extent of Plaintiff's claims of debilitating pain in her back, knees, hips, and shoulder. The record indicates her pain

symptoms were generally managed with icing and elevation, medication, and one-time injection interventions. Tr. 541, 543, 621, 695, 713,702, 703. Moreover, the record indicates that Plaintiff repeatedly exhibited a reluctance to comply with doctor recommendations for conservative treatments other than medication – such as physical therapy or wearing a hard neck collar. Tr. 489, 495, 621. Furthermore, Plaintiff's ability to participate in cleaning her apartment, shopping, and engaging in daily hygiene without assistance, conflicts with her subjective symptom allegations of debilitating pain. Tr. 256-63, 284-90, 418. Accordingly, the ALJ provided clear and convincing reasons for discounting Plaintiff's musculoskeletal symptom allegations.

### *Vision*

The ALJ found that the record revealed Plaintiff's glaucoma is "well controlled when she complies with treatment" and fails to corroborate Plaintiff's eyesight impairment allegations. Tr. 23.

In March 2012, Plaintiff sought treatment from ophthalmologist James Waldman, M.D., for complaints of decreased vision in both eyes, limiting her ability to read, and see road signs and captions. Tr. 411. Dr. Waldman noted 20/40 visual acuity in both eyes but diagnosed glaucoma and prescribed Latanoprost drops. Tr. 414. In subsequent exams, Dr. Waldman observed that Plaintiff's glaucoma was stable and controlled with medication; however, Plaintiff was frequently in poor compliance with her medication. Tr. 407, 409, 428, 879, 884, 889. Despite her poor compliance, Plaintiff's visual acuity generally remained within the 20/40 range and in December 2013, although Plaintiff's visual field test was suspicious for glaucoma, her optical coherence tomography test was within normal limits. Tr. 428, 886-87, 889. In January and March 2014, Dr. Waldman again noted Plaintiff's poor compliance with medication. Tr. 884, 879. In February 2015 Plaintiff requested a referral to a different eye doctor, reporting that she

felt her glaucoma was worsening; however, there is no evidence in the record regarding a subsequent eye exam. At the hearing, Plaintiff testified that she had stopped using the drops for her eyes for a "little bit" and noticed that her eyesight had worsened. Tr. 54. Thus, the record supports the ALJ's determination that Plaintiff's vision impairments are well controlled with medication.

The record also indicates that Plaintiff is able to participate in activities that belie her symptom allegations -- driving, reading, watching television, paying her bills, and counting change. Tr. 287, 417-18. Accordingly, the objective medical evidence, coupled with Plaintiff's lack of compliance with medication and ability to engage in activities that conflict with her claims, provide clear and convincing reasons to discount her allegations regarding the severity of her vision impairment.

### Anxiety

The ALJ found that the record showed "largely unremarkable mental status examination findings primarily limited to anxious affect and pressured speech but shows the claimant was consistently coherent and redirectable." Tr. 26. Concluding that the evidence does not support debilitating limitations in concentration or attention, the ALJ noted that Plaintiff has required only minimal treatment and has consistently interacted appropriately with her healthcare providers. *Id.*

In addition to Dr. Johns' consultative exam in August 2012, detailed above, the record shows Plaintiff attended three individual counseling sessions in March and April 2012. In two of the sessions, the therapist described Plaintiff as "active and engaged" during treatment. Tr. 363, 365. Plaintiff regularly exhibited an "anxious affect" and "pressured speech" in her visits with Dr. Nall. Tr. 504, 491, 494, 508, 543. In March 2013, upon Plaintiff's complaint of anxiety and

request to try medication, Dr. Nall began prescribing anti-anxiety medications. Tr. 494. After trying a couple of medications over a five-month period, Plaintiff reported that Paxil improved her symptoms. Tr. 492-94, 541, 543, 546. In February 2014, Plaintiff reported that she had stopped taking her anxiety medication "a while back" because she was "feeling better" but that she was beginning to feel more anxious again because her daughter was going to New York to interview for schools. Tr. 717. Plaintiff agreed to restart her medication. Tr. 720. About one year later, in February 2015, Plaintiff reported that she had not been taking Paxil; Dr. Nall observed that Plaintiff had a "mildly anxious affect" and encouraged her to restart Paxil. Tr. 639, 641, 665, 667.

In sum, the record reflects Plaintiff's mental health symptoms were alleviated by medication and even abated for periods of time so that she decided to stop taking the medication altogether. The record reflects that she was able to engage in activities such as regular church attendance, shopping in stores, and taking public transportation, all of which conflict with her claims that that anxiety prevents her from leaving home or interacting with other people. *See* Tr. 259, 286-7, 417. Accordingly, the ALJ provided clear and convincing reasons to discredit Plaintiff's subject mental health allegations.

**D.**    <u>**Lay Witness Statements**</u>

    **1) James Dowd**

Plaintiff argues that the ALJ improperly discredited the Third Party Function Report submitted by Plaintiff's stepfather, James Dowd.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, *supra*, 454 F.3d at 1053. "Descriptions by friends and family members in a position to observe a claimant's symptoms and

daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Indeed, the regulations expressly permit the ALJ to consider evidence regarding the severity of a claimant's impairments from non-medical sources such as parents, spouses, siblings, caregivers, and other relatives. 20 C.F.R. § 416.913. When an ALJ has properly discredited a claimant's subjective claims based on "well-supported clear and convincing reasons," the ALJ may properly reject lay witness testimony that merely reiterates the claimant's claims. *Molina*, 674 F.3d at 1121.

The ALJ gave no weight to Mr. Dowd's report for the same reasons she discredited the severity of Plaintiff's subjective symptom allegations -- the medical evidence did not corroborate the extent of the limitations alleged. Mr. Dowd completed the Third Party Function report in April 2013, stating that Plaintiff spends most of her time in bed due to pain. Tr. 306. As noted above, the ALJ properly found Plaintiff's pain allegations to be unsupported by the medical records and in conflict with Plaintiff's ADLs. Mr. Dowd reported that Plaintiff watches the news on television everyday and can drive a car, although she does not like to drive unless necessary due to her impaired vision. Tr. 308. Mr. Dowd indicated that Plaintiff's poor eyesight impaired her ability to count change, see the difference between paper currency bills, and follow simple instructions like a recipe. Tr. 308-10. As discussed above, the ALJ provided clear and convincing reasons based on substantial evidence in the medical records to discredit Plaintiff's claims of visual impairment. The conflicts between the objective medical records and Mr. Dowd's reports are germane reasons to discount his statements. Accordingly, the ALJ did not err.

### 2) Pamela Springer, Disability Adjudicator

Plaintiff argues that the ALJ erred by failing to address the determination made by a state agency disability adjudicator in 2012 that Plaintiff could perform only sedentary work. *See* Tr.

92. The Commissioner responds that state claim adjudicators are not medical professionals, and therefore any opinion by a claims adjudicator is not a "medical opinion" and need not be considered. The Commissioner also argues that the opinion is not relevant because it was rendered with regard to Plaintiff's prior claim and therefore predates the protective filing date in this matter.

Whether the ALJ was required to consider and address a nonmedical source opinion from a prior SSI claim is unclear, however, it appears unlikely. An ALJ is not required to explain the weight she gave to prior administrative medical findings in a claim if she gives controlling weight to a treating source's medical opinion. 20 C.F.R. § 416.927(e). And while an ALJ "generally should explain the weight given to" nonmedical opinion sources, she is not compelled to do so by mandatory language in the statute. 20 C.F.R. § 416.927(f)(2). Moreover, for claims filed after March 27, 2017, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether you are disabled" are expressly deemed "neither valuable nor persuasive" to the issue of disability and "will not be analyzed." 20 C.F.R. § 416.920b.

However, assuming without deciding that failure to address a prior agency finding limiting Plaintiff to sedentary work was error, the Court finds that any error was harmless. Two subsequent agency determinations found that Plaintiff could perform light work, with some modifications. Tr. 105,118. In contrast to the 2012 determination, the more recent determinations were made with the benefit of a complete medical record. Moreover, the 2012 determination was not consistent with the record as a whole. As such, any error is harmless.

E.      **Step Five Analysis**

Plaintiff argues that the ALJ erroneously based her conclusion that Plaintiff can perform

jobs that exist in the national economy on an "incomplete" hypothetical posed to the VE that failed to include the "impact of the limitations noted by Dr. Johns, Dr. Hennings, and Dr. Gollogly."

An ALJ may rely on the testimony of a VE to determine whether a claimant retains the ability to perform other work in the national or regional economy at step five. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations which are supported by substantial evidence in any hypotheticals posed to a vocational expert. *See id.* at 1163-65. "Conversely, an ALJ is not free to disregard properly supported limitations," including improperly discredited symptom testimony provided by the claimant or a lay witness. *Robbins, supra,* 466 F.3d at 886.

As discussed *supra*, Section B, the ALJ properly discredited medical opinion evidence suggesting Plaintiff might have difficulty maintaining employment due to mental health symptoms. Having concluded such a limitation was not supported by substantial evidence, the ALJ was not required to include it in the hypothetical. Also discussed in Section B, *supra*, the ALJ rejected the limitation to simple work yet incorporated the limitation to unskilled work into the hypothetical posed to the VE. Accordingly, the ALJ's step five findings must be affirmed.

## CONCLUSION

The ALJ's decision is supported by substantial evidence and any error is harmless. For the reasons stated above, the Commissioner's decision is AFFIRMED.


DATED this 26th day of February, 2018.


                                                    _____/s/John Jelderks_____
                                                    John Jelderks
                                                    United States Magistrate Judge

OPINION AND ORDER -- 29